IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

MARY F. ZWOLLE,                        )
                                                         )
                        Plaintiff,     )
                                                         )
  vs.                                                         )
                                                         )
NANCY A. BERRYHILL, acting      )
Commissioner of Social Security,     )
                                                         )    No. 4:16-cv-0030-HRH
                          Defendant.   )
_____)

## O R D E R

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 42 U.S.C. §§ 401-434. Plaintiff Mary F. Zwolle has timely filed her opening brief,[1] to which defendant Nancy A. Berryhill has responded.[2] Oral argument was not requested and is not deemed necessary.

### Procedural Background

On September 22, 2010, plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging that she became disabled on October 9, 2009. On

---

[1]Docket No. 14.

[2]Docket No. 15.

-1-

March 23, 2011, plaintiff's application was denied. Plaintiff did not request further review of this denial.

On December 19, 2013, plaintiff again filed an application for disability benefits under Title II of the Social Security Act, alleging that she became disabled on October 20, 2009. However, because the previous determination dated March 23, 2011 is final and binding, the relevant onset date for purposes of the application under review is March 24, 2011.

Plaintiff alleges that she is disabled due to her back, bilateral legs, and stomach. Plaintiff's application was initially denied on April 9, 2014. After a hearing on February 19, 2015, an administrative law judge (ALJ) denied plaintiff's claim. On July 29, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 27, 2015 decision the final decision of the Commissioner. On September 28, 2016, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Background

Plaintiff was born on July 31, 1976. She was 38 years old at the time of the administrative hearing. Plaintiff has a ninth grade education. Plaintiff has three children. At the time of the hearing, plaintiff was living with her significant other and one of her children. Plaintiff's past relevant work includes work as a hospital janitor, laundry worker, cashier, hostess, and test driver.

## The ALJ's Decision

The ALJ first determined that plaintiff "last met the insured status requirement of the Social Security Act on December 31, 2014."[3] Based on plaintiff's date last insured and her previous application for benefits, the ALJ noted that "this decision is relevant only to the period beginning March 24, 2011 (the potential onset date) through December 31, 2014, the date last insured."[4]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

---

[3] Admin. Rec. at 13. In order to be eligible for Title II benefits, plaintiff must prove that she was disabled as of her date last insured.

[4] Admin. Rec. at 12.

[5] The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the

(continued...)

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from the potential onset date of March 24, 2011 through her date last insured of December 31, 2014...."[6]

At step two, the ALJ found that plaintiff "had the following severe impairments: degenerative disk and facet disease of the lumbar spine, status-post laminotomy, diskectomy, and fusion...."[7]

At step three, the ALJ found that "[t]hrough the date late insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[8] The ALJ considered Listing 1.04 (disorders of the spine).[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that

---

[5](...continued)
  national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[6]Admin. Rec. at 13.

[7]Admin. Rec. at 13.

[8]Admin. Rec. at 14.

[9]Admin. Rec. at 14.

-4-

> through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) except the claimant is limited to standing and walking for up to 4 hours and sitting up to 6 hours in an 8-hour workday; a sit/stand option allowing the claimant to alternate sitting or standing positions throughout the day; occasional climbing of ladders, ropes, and scaffolds; occasional stooping, kneeling, crouching, and crawling; and must avoid concentrated exposure to excessive vibration.[10]

The ALJ found plaintiff's pain and symptom statements less than credible because they were "not supported by the objective evidence, consistent examination findings, or her treatment provider's or evaluators' opinions."[11] The ALJ also found plaintiff's pain and symptom statements less than credible because "[t]he medical evidence of record ... suggests symptom[] exaggeration."[12] The ALJ also noted "that the medical evidence of record reveals a 10 month gap in treatment from September 2013 to July 2014, apparently related to a lack of insurance...."[13] "However," the ALJ stated that if "the claimant's symptoms were as severe as alleged, I would expect to see emergency room visits if for no other reason than to obtain medications."[14] The ALJ also noted that plaintiff had "alleged that her medications cause

---

[10] Admin. Rec. at 14.

[11] Admin. Rec. at 16.

[12] Admin. Rec. at 17.

[13] Admin. Rec. at 17.

[14] Admin. Rec. at 17.

drowsiness or sleepiness and dizziness...."[15] However, the ALJ found "no credible evidence that the claimant's prescription medications cause more than minimal, if any, limitations on her ability to perform basic work activities."[16] The ALJ also found plaintiff's pain and symptom statements less than credible because her work history showed that she "worked only sporadically prior to the alleged disability onset date" and this "raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments...."[17]

The ALJ gave Mr. Pasek's February 2015 assessment[18] no weight because he was not an accepted medical source and because his findings were not supported by the objective medical evidence.[19] The ALJ also noted that Mr. Pasek's assessment was "after the date last insured of December 31, 2014[.]"[20]

At step four, the ALJ found that "[t]hrough the date last insured, the claimant was unable to perform any past relevant work...."[21]

At step five, the ALJ found that "[t]hrough the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs

---

[15]Admin. Rec. at 17.

[16]Admin. Rec. at 18.

[17]Admin. Rec. at 18.

[18]Mr. Pasek's assessment is discussed below.

[19]Admin. Rec. at 18.

[20]Admin. Rec. at 18.

[21]Admin. Rec. at 18.

that existed in significant numbers in the national economy that the claimant could have performed...."[22] This finding was based on the vocational expert's testimony[23] that plaintiff could work as a small parts assembler, ticket taker, or tanning salon attendant.[24]

Thus, the ALJ concluded that "[t]he claimant was not under a disability, as defined in the Social Security Act, at any time from March 24, 2011, the potential onset date, through December 31, 2014, the date last insured...."[25]

### Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole,

---

[22]Admin. Rec. at 19.

[23]Daniel LaBrosse testified as the vocational expert at the administrative hearing. Admin. Rec. at 47-54.

[24]Admin. Rec. at 19-20.

[25]Admin. Rec. at 20.

weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff argues that the ALJ erred in assessing her RFC because he substituted his opinion for that of medical professionals. "An ALJ may not substitute his lay opinion ... for that of a professional." Flores v. Colvin, Case No. ED CV 16-1020-PLA, 2017 WL 367408, at *6 (C.D. Cal. Jan. 24, 2017) (citing Tackett, 180 F.3d at 1102-03). The ALJ did not mention or discuss Dr. Kohnen's March 21, 2011 opinion,[26] presumably because it was dated before the relevant period. See Jesus v. Astrue, Case No. EDCV 07-1247-MAN, 2009 WL 2900290, at *7 (C.D. Cal. Sept. 3, 2009) (ALJ is not required to discuss evidence "related to

---

[26]On March 21, 2011, Elizabeth Kohnen, M.D., examined plaintiff. Dr. Kohnen opined that plaintiff

> is able to do work related activities including sitting – in fact she seemed fairly comfortable during our hour and 15 minutes together, standing for short periods, moving about for short periods, handling objects, speaking, seeing, and traveling. She shouldn't do anything but very light lifting and carrying. She would probably need to be able to change her position periodically.

Admin. Rec. at 450.

-8-

a previously adjudicated period in which the Commissioner already found plaintiff not disabled"). The only opinion as to functional capacity that the ALJ discussed was the February 9, 2015 assessment by Jim Pasek,[27] the physical therapist that Dr. Accola[28] referred plaintiff to for a functional assessment. But, the ALJ gave no weight to Mr. Pasek's assessment. Plaintiff does not argue that the ALJ erred in rejecting Mr. Pasek's assessment because he was not an acceptable medical source and because his examination findings were not supported by the objective medical evidence of record.[29] Rather, plaintiff argues that because the ALJ rejected Mr. Pasek's assessment, there was no medical opinion upon which the ALJ could have relied, which means that the ALJ formulated plaintiff's RFC from the raw

---

[27]As to plaintiff's "overall level of work", Pasek found that plaintiff could not

> perform the full range of Sedentary work as defined by the US Dept. of Labor in the DOT. This is due to difficulties performing the dynamic strength, and the mobility demands of work. These difficulties were due to a severe increase in low back and lower extremity pain which resulted in major limitations in movement.

Admin. Rec. at 585. Pasek reported that plaintiff could not lift or carry anything, was unable to push or pull, could sit for up to 1/3 of the day, could never stand, was unable to work with arms overhead while standing, was unable to work bent over while standing or stooping, was unable to work kneeling, was unable to work bent over while sitting, was unable to work while squatting, could never climb stairs, could never repetitively squat, was unable to walk, was unable to crawl, was unable to climb a ladder, was unable to repetitively rotate her trunk either while sitting or standing, and was unable to balance on level or unlevel surfaces. Admin. Rec. at 587.

[28]Dr. Accola was plaintiff's primary care physician beginning in October 2011. Admin. Rec. at 462-500; 540; 545-567.

[29]As defendant argues, these were probably germane reasons for rejecting Mr. Pasek's assessment.

medical data. Plaintiff argues that this was error because an ALJ "is 'simply not qualified to interpret raw medical data in functional terms.'" Collins v. Colvin, Case No. 2:13–CV–00125-JTR, 2014 WL 534996, at *5 (E.D. Wash. Feb. 10, 2014) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)).

Defendant argues that the ALJ was not "playing doctor" as plaintiff contends because it is "the ALJ [who] is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Social Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). Defendant argues that the ALJ considered all of the relevant evidence in the record in formulating plaintiff's RFC and points out that the ALJ devoted nearly four, single-spaced pages parsing out plaintiff's subjective complaints, the objective medical evidence, and opinion evidence; and then formulated his RFC to capture plaintiff's functional limitations.

The problem with defendant's argument is that most of those four pages are devoted to the ALJ's credibility findings. The ALJ does discuss some of the objective medical evidence but it is in the context of assessing plaintiff's credibility. Moreover, the objective medical evidence that he discusses does not readily translate into functional capacity. What the ALJ did here was "review[] the medical findings in the[] records and ma[k]e a physical RFC determination based on his own interpretation of that raw medical evidence." Stevenson v. Colvin, Case No. 2:15-cv-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015). "Such a determination was impermissible and cannot form the basis of an ALJ's RFC conclusions." Id. Thus, the ALJ erred in assessing plaintiff's RFC.

-10-

The ALJ's error was not harmless because it resulted in the ALJ giving the vocational expert an incomplete hypothetical. "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) (quoting Gamer v. Sec. of Health and Human Servs., 815 F.2d 1275, 1279 (9th Cir. 1987)). "If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." Id.

Because the ALJ's error was not harmless, this matter must be remanded for further proceedings. A remand for further proceedings is appropriate here because the record needs to be developed more fully. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). What is missing is a functional assessment by an accepted medical source for the relevant time period.

## Conclusion

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 6th day of April, 2017.

/s/ H. Russel Holland
United States District Judge